**UNITED STATES of America, Plaintiff,**

v.

**Steve MARTELL, et al., Defendants.**

**Civ. No. 2:93–CV–116–RL.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 8, 1994.

Orest S. Szewciw, U.S. Attys. Office, Dyer, IN, Thaddeus Lightfoot, Myles E. Flint, Gregory L. Sukys, U.S. Dept. of Justice, Environmental Enforcement Section Environment and Natural Resources Div., Washington, DC, for plaintiff.

Ann C. Tighe, James R. Streicker, Cotsirilos Stephenson Tighe and Streicker, Chicago, IL, for defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion to Strike Certain Affirmative Defenses to CERCLA Section 107 Liability filed by the Plaintiff, the United States of America, on May 21, 1993. For the reasons set forth below, the United States' Motion to Strike is hereby **DENIED.**

### BACKGROUND

This suit focuses on an inactive chemical and waste disposal facility at 7537 9th Avenue in Gary, Indiana. From 1973 to 1975, liquid and solid chemical waste containing hazardous substances were disposed of at the site by burying the waste or discharging it to surface soil.

On September 8, 1983, the administrator of the Environmental Protection Agency ("EPA") placed the site on the National Priorities List, a national list of hazardous substance sites. The EPA conducted a remedial investigation and feasibility study ("RI/FS") to investigate the nature and extent of contamination at the site and to evaluate remedial alternatives. The RI/FS showed that surface water and sediments at the site were contaminated with a variety of hazardous substances.

On December 7, 1983, the United States District Court for the Northern District of

Indiana entered a Partial Consent Judgment ("PCJ") under the Resource Conservation and Recovery Act ("RCRA") between the United States and Defendants, Steve Martell ("Martell"), the owner of a portion of the site, and Stryker International, Inc. ("Stryker International"), the corporation at which Martell is president. Under the terms of section VI of the PCJ, Martell was required to submit to the EPA a detailed plan for assessment of subsurface soil and groundwater contamination at the site. Additionally, the plan was to include provisions for locating buried waste at the site, identifying areas of contamination in subsurface soils, assessing groundwater contamination, evaluating remedial alternatives, and selecting an appropriate remedial alternative. Section XXI of the PCJ reserved the EPA's right to undertake a federally financed response action at the site. Section X provided that Martell would be liable for the costs incurred in undertaking such a federally financed response. In addition, this section provided that he would be responsible for assessment, remedial, and monitoring measures required under the PCJ.

On April 13, 1993, the Government filed this Complaint, alleging that Martell never submitted the site assessment plan as required by sections VI and X of the PCJ. He also never submitted for approval a remedial plan for final measures to be taken at the site as required by sections VII and X of the PCJ. Because of this inaction, the EPA conducted another RI/FS to investigate the nature and extent of contamination at the site and to evaluate remedial alternatives. Count One alleges that Martell is liable under 42 U.S.C. section 9607(a), section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The Government seeks $2 million in damages for costs incurred at the site. Count Two alleges that Martell and Stryker International are liable under section X of the PCJ for the cost of the RI/FS conducted at the site by the EPA.

On May 7, 1993, Martell and Stryker International filed an Answer to this Complaint. Martell and Stryker International assert the following affirmative defenses which are currently in dispute:

2. The Complaint is barred because Plaintiff has waived and/or is estopped from asserting its claims by its conduct in unilaterally and without good reason in fact or law rejecting terms of the Partial Consent Judgment and wrongfully refusing to permit Defendants to fully abide by the terms of the Partial Consent Judgment.

\* \* \* \* \* \*

5. The Complaint is barred under the doctrine of laches.

6. Due to its delay in seeking to bring an action, Plaintiff has failed properly to mitigate its claimed costs and, as a result, is barred from recovering some or all of its alleged costs.

7. The Complaint is barred because the costs alleged to have been incurred have not been shown to be consistent with the National Contingency Plan.

8. The Complaint is barred by the doctrine of unclean hands.

The Government filed this Motion to Strike on May 21, 1993, arguing that the above affirmative defenses are insufficient as a matter of law as to CERCLA liability and should be stricken to narrow the issues in this action and to avoid unnecessary expenditures of time and resources. Specifically, the Government contends that affirmative defenses # 2, # 5, and # 8, as equitable defenses, are not available under section 107(b) of CERCLA. Additionally, the Government argues that equitable defenses may not be asserted against the United States when the federal government acts in its sovereign capacity to protect the public welfare. The Government contends that affirmative defense # 6 is inappropriate because CERCLA does not impose a duty to mitigate response costs. As to affirmative defense # 7, the Government argues that it should be stricken because it is not listed in the defenses available under section 107(b).

*DISCUSSION*

Federal Rule of Civil Procedure 12(f) permits a district court to strike from the pleadings "any insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Generally, motions to strike are disfavored. *See United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir.1975). "If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record—such as on a motion for summary judgment." *Van Schouwen v. Connaught Corp.,* 782 F.Supp. 1240, 1245 (N.D.Ill.1991). Therefore, affirmative defenses should only be stricken when they are insufficient on the face of the pleadings. *Williams v. Jader Fuel Co.,* 944 F.2d 1388, 1400 (7th Cir.1991); *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989). When the sufficiency of the defense depends upon disputed issues of fact or questions of law, a motion to strike an affirmative defense should not be granted. *United States v. Walerko Tool & Eng'g Corp.,* 784 F.Supp. 1385, 1387–88 (N.D.Ind. 1992).

Section 107(a) of CERCLA imposes liability for response costs on present site owners and operators, those who were owners and operators at the time of disposal, and generators and transporters of hazardous substances. 42 U.S.C.A. § 9607(a) (West 1983). Section 107(a) specifies that liability will be imposed, "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C.A. § 9607(a) (West 1983). Section 107(b) provides that:

> There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
>
> (1) an act of God;

> (2) an act of war;
>
> (3) an act or omission of a third party other than an employee or agent of the defendant . . .; or
>
> (4) any combination of the foregoing paragraphs.

42 U.S.C.A. § 9607(b) (West 1983).

*Waiver/Estoppel, Laches, and Unclean Hands*

▪ As to the defenses of waiver/estoppel, laches, and unclean hands set forth respectively in paragraphs 2, 5, and 8 of Defendants' Answer, the Government first argues that these equitable defenses are insufficient as a matter of law because they are not among those specifically listed in section 107(b) as defenses to an action under section 107 of CERCLA. The Government maintains that the "notwithstanding" language in section 107(a) exclusively limits the non-procedural defenses which a defendant can raise to those listed in section 107(b). Martell and Stryker International point out that under the *Romero–Barcelo* standard,[1] a statute must contain a clear legislative demand to restrict equitable defenses. Martell and Stryker International argue that CERCLA does not contain such a demand given that equitable defenses are expressly available under section 106 of CERCLA. *See* 42 U.S.C.A. § 9606 (West 1983). Moreover, they argue that granting a motion to strike would be inappropriate because courts are split on the issue of whether section 107 forecloses equitable defenses.

Neither the Supreme Court nor the Seventh Circuit has addressed the issue as to whether equitable defenses are available in section 107 CERCLA actions. Moreover, this Court acknowledges that other federal courts are divided on the issue. Several courts have permitted equitable defenses in CERCLA enforcement actions because the

---

1. In *Weinberger v. Romero–Barcelo*, the Supreme Court held that equitable defenses to injunctive relief must be considered in construing section 311 of the Clean Water Act. The court noted that:

> [T]he comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or

by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

456 U.S. 305, 313, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) (quoting *Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946)).

action is one in equity, seeking the equitable remedy of restitution. *See, e.g., United States v. Mottolo,* 695 F.Supp. 615, 626 (D.N.H.1988); *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 205 (W.D.Mo. 1985). Other courts have held that equitable defenses are not available in a section 107 action because section 107(a) restricts defenses solely to those listed in section 107(b). *See,* e.g., *United States v. Wedzeb Enterprises, Inc.,* 809 F.Supp. 646, 658 (S.D.Ind.1992); *United States v. Atlas Minerals & Chemicals, Inc.,* 797 F.Supp. 411, 417 (E.D.Pa. 1992); *United States v. Kramer,* 757 F.Supp. 397, 425–27 (D.N.J.1991); *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1451 (W.D.Mich.1989). Still other courts, without deciding the issue, refuse to eliminate equitable defenses on a motion to strike, believing that it would be premature at such stage. *See,* e.g. *United States v. Fairchild Indus., Inc.,* 766 F.Supp. 405, 414 (D.Md.1991); *United States v. Marisol, Inc.,* 725 F.Supp. 833, 845 (M.D.Pa.1989).

Because motions to strike are disfavored, as well as the fact that this issue is heavily disputed among lower courts, this Court believes that it would be inappropriate at this time to strike affirmative defenses # 2, # 5, and # 8 for the reason that they are not specified in section 107(b). Moreover, adhering to the approach of Judge Miller in *United States v. Walerko Tool & Eng'g Corp.,* 784 F.Supp. 1385, 1388 (N.D.Ind.1992), this Court need not strike the above affirmative defenses if they are available to other claims in the Complaint. If these defenses can be applied to Count Two, violation of the PCJ, this Court should not strike the affirmative defenses.

The Government next argues that the Court should strike the equitable defenses because such defenses cannot be asserted against the United States when it acts in its sovereign capacity to protect the public welfare. Although it is difficult to successfully assert such defenses against the Government, these defenses are not prohibited as a matter of law.

■ Martell and Stryker International assert waiver and/or estoppel as affirmative defense # 2. As to the defense of waiver,

the Government points out that courts have been reluctant to apply waiver against the Government. The Government further states that the United States only can waive its rights through the acts of an authorized representative. The Government, however, fails to present any case law, nor does this Court find any case law, holding that the defense of waiver is foreclosed as a matter of law against the Government.

■ The defense of estoppel also has not been precluded as a matter of law against the Government by the Supreme Court or the Seventh Circuit. *Walerko,* 784 F.Supp. at 1389. The traditional elements of equitable estoppel are: 1) misrepresentation by the party against whom estoppel is asserted; 2) reasonable reliance on that misrepresentation by the party asserting estoppel; and 3) detriment to the party asserting estoppel. *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992). To assert estoppel against the Government, the party must show "affirmative misconduct" by the Government, as well as establishing traditional elements of estoppel. *United States v. McGaughey,* 977 F.2d 1067, 1073–74 (7th Cir.1992); *Kennedy,* 965 F.2d at 417. Moreover, the defendant also carries the burden of establishing that the harm he suffered "outweighs the pressing public interest in the enforcement of congressionally mandated public policy." *Walerko,* 784 F.Supp. at 1389 (quoting *Portmann v. United States,* 674 F.2d 1155, 1167 (7th Cir.1982)). Although this burden may be difficult for Martell and Stryker International to meet, this Court cannot say on the face of the pleadings that this defense is clearly insufficient.

■ Martell and Stryker International assert the defense of laches as affirmative defense # 5. To establish the defense of laches, there must be a lack of diligence in bringing the suit by the plaintiff and prejudice to the defendant from the delay. *F.D.I.C. v. Knostman,* 966 F.2d 1133, 1139 (7th Cir.1992); *Zelazny v. Lying,* 853 F.2d 540, 541 (7th Cir.1988). If the delay is unreasonable and inexcusable, then the defendant must show prejudice. *Winchester v. Pension Committee,* 942 F.2d 1190, 1194 (7th

Cir.1991); *Zelazny,* 853 F.2d at 541. Although Supreme Court precedent formerly seemed to bar laches as a defense to suits brought by the Government, as Judge Miller pointed out in *Walerko,* the Seventh Circuit recently has questioned the validity of this earlier Supreme Court precedent. 784 F.Supp. at 1389. Following dictum of more recent Supreme Court cases, *see,* e.g. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 373, 97 S.Ct. 2447, 2458, 53 L.Ed.2d 402 (1977), the Seventh Circuit has held that laches can be asserted against the Government. *NLRB v. P\*I\*E Nationwide, Inc.,* 894 F.2d 887, 894 (7th Cir.1990); *EEOC v. Vucitech,* 842 F.2d 936, 942 (7th Cir.1988). Given this precedent, affirmative defense # 5 is also sufficient on the face of the pleadings.

▆▆▆ Martell and Stryker International claim the defense of unclean hands as affirmative defense # 8. "Unclean hands is a traditional defense to an action for equitable relief." *Orig. Great Am. Choc. Chip Cookies Co. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 281 (7th Cir.1992). Under the doctrine, plaintiff's fault, like the defendant's, may be relevant regarding what, if any, remedy the plaintiff is entitled to receive. *Shondel v. McDermott,* 775 F.2d 859, 868 (7th Cir.1985); *United States v. Bd. of Educ. of City of Chicago,* 636 F.Supp. 1050, 1051 (N.D.Ill. 1986). The doctrine of unclean hands, however, should not be applied to frustrate the purpose of a federal statute or to thwart public policy. *Pan–American Petroleum & Transport Co. v. United States,* 273 U.S. 456, 505–06, 47 S.Ct. 416, 424, 71 L.Ed. 734 (1927); *Donovan v. Robbins,* 99 F.R.D. 593, 600 (N.D.Ill.1983). This Court believes that it would be premature at this time to determine whether the unclean hands defense in this matter is inconsistent with public policy. As the Seventh Circuit has granted some latitude in applying laches and estoppel against the Government, this Court believes that such latitude also should be applied to the defense of unclean hands.

*Costs Inconsistent With the National Contingency Plan*

▆▆▆ The Government argues that affirmative defense # 7, which alleges that response costs are inconsistent with the National Contingency Plan ("NCP"), is insufficient as a matter of law because section 107 does not require an affirmative showing that all costs incurred are recoverable. CERCLA expressly provides that the Government is entitled to recover "all costs of removal or remedial action incurred by the United States ... not inconsistent with the National Contingency Plan." 42 U.S.C.A. § 9607(a)(4)(A) (West 1983). "The statutory language itself establishes an exception for costs that are inconsistent with the NCP." *United States v. Northeastern Pharmaceutical,* 810 F.2d 726, 747 (8th Cir.1986). *See also United States v. Outboard Marine Corp.,* 789 F.2d 497, 506 (7th Cir.1986); *United States v. Pretty Products,* 780 F.Supp. 1488, 1501 (S.D.Ohio 1991). Martell and Stryker International, however, as the parties claiming the benefit of the exception, have the burden of establishing that certain costs are inconsistent with the NCP. *Northeastern Pharmaceutical,* 810 F.2d at 747; *Pretty Products,* 780 F.Supp. at 1501. Whether Martell and Stryker International can meet this burden largely depends on the facts. At this time, based on the face of the pleadings, this Court cannot say that the defense is insufficient as a matter of law.

*Failure to Mitigate Costs*

▆▆▆ The Government asserts that affirmative defense # 6, failure to mitigate costs, is insufficient because CERCLA imposes no duty to mitigate response costs. Although CERCLA provides a statutory exception for costs inconsistent with the NCP, all other costs are conclusively presumed reasonable. *Northeastern Pharmaceutical,* 810 F.2d at 747. Therefore, CERCLA does not require the Government to mitigate response costs. As the Government has not argued that affirmative defense # 6 also is insufficient as to the PCJ claim, this Court believes that it would be inappropriate at this time to strike the defense.

*CONCLUSION*

For the reasons set forth above, the United States' Motion to Strike Certain Affirma-

tive Defenses to CERCLA Section 107 Liability is **DENIED.**